UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

HALEIGH JANEE McBRIDE,          CIVIL ACTION NO. 6:11-cv-0557 (Lead)
ET AL.                                                 6:11-cv-01726 (Member)
                                                           6:11-cv-01686 (Member)
                                                           6:11-cv-01544 (Member)


VERSUS                                      MAGISTRATE JUDGE HANNA

ESTIS WELL SERVICE, LLC          BY CONSENT OF THE PARTIES


**<u>MEMORANDUM  RULING</u>**


These consolidated cases come before this Court by consent pursuant to 28

U.S.C. § 636(c).  Jurisdiction is premised on 28 U.S.C. §§ 1331 and 1333 in that the

claims are based on the Jones Act, 46 U.S.C. § 30104 (a),  and general maritime law.

No party has sought trial by jury.  Pending before the Court is the defendant's motion

to dismiss the plaintiffs' claims for punitive damages under Fed. R. Civ. P. 12(b)(6).[1]

At issue is whether the remedy of punitive damages is legally cognizable under the

Jones Act and/or general maritime law in the context of a wrongful death/survival

action, or a personal injury action, for seamen who were killed or injured in Louisiana

---

[1]         As the defendant has already filed answers in all of these consolidated actions, the
motion may more appropriately be treated as a motion under Rule 12(c), pursuant to Rule
12(h)(2)(B). Regardless, the motions are treated in the same manner. *In re Great Lakes Dredge and
Dock Co. LLC.*, 624 F.3d 201, 209-10, (5th Cir. 2010).

territorial waters after the decision of *Atlantic Sounding Co., Inc. vs. Townsend*, 557 U.S. 404 (2009).  For the reasons explained below, the motion is GRANTED.

## BACKGROUND

On March 9, 2011, the barge Estis Rig 23 was operating in Bayou Sorrell, a navigable waterway in the State of Louisiana.  As the barge crew, all of whom were employed by Estis, was attempting to straighten the twisted monkey board in the derrick, the pipe in the derrick shifted, and the derrick and rig fell over.  One crew member died, and three more claim that they were injured.

Skye Sonnier died, and in the lead case, Haleigh Janee McBride sued Estis in her capacity as the administratrix of Mr. Sonnier's estate and on behalf of Mr. Sonnier's minor child, I.M.S.  Saul C. Touchet claims that he sustained both physical and psychological injuries.[2]  Brian Joseph Suire[3] and Joshua Bourque[4] claim that they sustained psychological injuries because they were present when the incident occurred.

All of the plaintiffs seek to recover under the Jones Act for Estis's alleged negligence, and all of them seek to recover under the general maritime law for the

---

[2]      Civil Action No. 6:11-cv-01686, Rec. Doc. 1 at ¶ 7.

[3]      Civil Action No. 6:11-cv-01544, Rec. Doc. 1.

[4]      Civil Action No. 6:11-cv-01726, Rec. Doc. 1.  After the instant motion was filed but before it was decided, Mr. Bourque settled his claims, which have been dismissed.  Rec. Doc. 44.

alleged unseaworthiness of the vessel.[5]  All of the plaintiffs have also asserted claims for punitive and/or exemplary damages due to Estis's alleged gross, willful, wanton, and/or reckless conduct that allegedly constituted a callous disregard of, or showed indifference to, the safety of the crew members.[6]

Estis has indicated that it is willing to stipulate to liability for the incident but states that it cannot do so while the claims for punitive damages exist.[7]  Estis is specifically not seeking to dismiss any cause of action, nor is it seeking to dismiss any claims for punitive damage arising out of the failure to pay maintenance and cure. The motion is limited solely to the availability, or not, of a punitive damages remedy under the Jones Act and/or general maritime law.

<u>ANALYSIS</u>

A.   <u>THE STANDARD FOR A RULE 12(B)(6) MOTION TO DISMISS</u>

A motion to dismiss for failure to state a claim, under Rule 12(b)(6), is appropriate when a defendant attacks the complaint because it fails to state a legally

---

[5]      Although the plaintiffs made alternative allegations under the general maritime law pursuant to 33 U.S.C. § 905(b), their status as seamen is uncontested.

[6]      Civil Action No. 6:11-cv-00557, Rec. Doc. 1 at ¶ 13 (McBride's complaint); Civil Action No. 6:11-cv-01544, Rec. Doc. 1 at ¶ 14 (Suire's complaint); Civil Action No. 6:11-cv-01726, Rec. Doc. 1 at ¶ 18 (Bourque's complaint); Civil Action No. 6:11-cv-01686, Rec. Doc. 1 at ¶ 18 (Touchet's complaint).

[7]      Rec. Doc. 27-1 at 6.

cognizable claim.[8]  The defendant does not challenge the factual allegations of the complaints. Rather, as the issue is postured solely in the context of this motion, the standard is whether "with every doubt resolved in the pleader's behalf, the complaint states *any* legally cognizable claim for relief."[9]

## B.    THE PARTIES' CONTENTIONS

Estis contends that the Jones Act only permits recovery of pecuniary losses whether for personal injury or wrongful death.  Because punitive damages are not pecuniary in nature, Estis contends that punitive damages cannot be recovered on the Jones Act claims.  Estis further contends that, notwithstanding the decision in *Townsend*, under the reasoning of *Miles v. Apex Marine Corp.,*[10] the plaintiffs cannot recover punitive damages because their unseaworthiness claims overlap their Jones Act claims.

The plaintiffs contend that *Townsend* left open the question whether punitive damages are available under the Jones Act, however, even if punitive damages are not available for their Jones Act claims, the plaintiffs contend that the Supreme Court's

---

[8]        *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[9]        *Wilson v. Birnberg*, 667 F.3d 59, 595 (5th Cir. 2012), citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 640 (3d ed.2004) (emphasis added).

[10]       *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990).

ruling in *Exxon Shipping Co. v. Baker*[11] suggests that they should be permitted to recover punitive damages by way of their general maritime law claims.[12]  They also contend that the Supreme Court's ruling in *Townsend,* which abrogated the *en banc* decision of *Guevara v. Maritime Overseas Corporation*,[13] reinstated the holding of *In Re Merry Shipping*[14] as the controlling precedent in this circuit and permits the recovery of punitive damages.

## C.   NON-PECUNIARY DAMAGES UNDER THE JONES ACT

In 2006, Congress amended the Jones Act,[15] to provide that the "[L]aws of the United States regulating recovery for personal injury to, or death of, a railway employee (FELA)[16] apply to an action under this section."  The Jones Act provides the sole basis upon which a seaman or his beneficiaries may sue the seaman's employer for negligence.[17]  Neither the Jones Act nor FELA limit damages in any

---

[11]     *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008).

[12]     Intertwined into this argument is the assertion that punitive damages should not be considered "non-pecuniary."

[13]     *Guevara v. Maritime Overseas Corporation*, 59 F.3d 1496 (5th Cir. 1995).

[14]     *In Re Merry Shipping*, 650 F.2d 622 (5th Cir. 1981).

[15]     46 U.S.C. § 30104, *et seq*.

[16]     45 U.S.C. § 51, *et seq*.

[17]     *Linton v. Great Lakes Dredge & Dock Co*., 964 F.2d 1480, 1489 (5th Cir. 1992); *Beltia v. Sidney Torres Marine Transport, Inc*., 701 F.2d 491, 493 (5th Cir. 1983).

form.[18]   When the Seamen's Welfare Act of 1915 was amended in 1920 to what became the Jones Act, it generically referred to "damages" and incorporated "all *statutes* of the United States modifying or extending the common law right or remedy in cases of personal injury to railway employees. . ." (Emphasis added)[19]   However, in 1913, the Supreme Court held in *Michigan Central Railroad Co. v. Vreeland* that only pecuniary damages were available under FELA.[20]   This decision was based on the jurisprudential gloss applied to Lord Campbell's Act which also had no pecuniary limitation on damages.[21]   Nearly seventy-five years later, in *Miles v. Apex Marine,* the Court stated:

> When Congress passed the Jones Act, the *Vreeland* gloss on FELA, and the hoary tradition behind it, were well established.   Incorporating FELA unaltered into the Jones Act, Congress must have intended to incorporate the pecuniary limitation on damages as well.[22]

Based on this interpretation, the Court stated the Jones Act "limits recovery to pecuniary loss," and held loss of society, as an item of non-pecuniary damages, was

---

[18]     *Miles*, 498 U.S. at 32.

[19]     Ch. 250, Sec. 33, 41 Stat. 1007, June 5, 1920.

[20]     *Michigan Central Railroad Co. v. Vreeland,* 227 U.S. 59, 69-71 (1913).

[21]     *Id.* at 71.

[22]     *Miles,* 498 U.S. at 32.

not available in a wrongful death claim brought under the Jones Act. [23]   The

jurisprudence is consistent that punitive damages are non-pecuniary, and since the

jurisprudence has interpreted the Jones Act to permit only the recovery of pecuniary

damages, punitive damages would not be available as a remedy under that statute.[24]

*Townsend* does not hold that punitive damages are recoverable under the Jones

Act.  In response to the dissent's argument, the majority stated in a footnote:

> Because we hold that <u>Miles</u> does not render the Jones Act's damages
> provision determinative of respondent's remedies, we do not address the
> dissent's argument that the Jones Act, by incorporating the provisions of
> the Federal Employers' Liability Act, see <u>46 U.S.C. § 30104(a)</u>,
> prohibits the recovery of punitive damages in actions under that
> statute.[25]

The "respondent's remed[y]" in *Townsend* was a seaman's entitlement to

punitive damages under the general maritime law cause of action for maintenance and

cure.  *Townsend* "does not call into question *Miles'* holding concerning the damages

---

[23]     *Miles,* 498 U.S. at 32-33.

[24]     *Kopczynski v. The Jacqueline,* 742 F.2d 555, 560 (9th Cir. 1984), *cert. denied*, 471 U.S. 1136 (1985); *Bergen v. F/V St. Patrick,* 816 F.2d 1345, 1347 (9th Cir. 1987); *Miller v. American President Lines* 989 F.2d 1450, 1454-59 (6th Cir 1993);  *Horsely v. Mobil Oil Corp.,* 15 F.3d 200, 202-03 (1st Cir. 1994); *Guevara,* 59 F.3d at 1506, abrogated by *Townsend*, 129 S.Ct. 2561; *Neal v. Barisich, Inc*., 707 F.Supp. 862, 873 (E.D. La. 1989); *Anderson v. Texaco, Inc.* 797 F.Supp. 531, 534 (E.D. La. 1992) and cases cited therein.

[25]     *Townsend*, 129 S.Ct. at 2575 n. 12.

limitations applicable to the Jones Act"[26] and "does not . . . cast doubt on the [*Miles*] Court's holding that the Jones Act incorporated FELA's 'pecuniary limitation on damages.'"[27]  Following this analysis, the district court in *Wagner v. Kona Blue Water Farms, LLC* concluded that the Ninth Circuit's prohibition on punitive damages under the Jones Act set forth in *Kopczynski v. The Jacqueline* was consistent with *Townsend* and remained good law.[28]  This Court agrees with that conclusion.

Since *Miles*, the courts of this circuit have consistently followed the rule that punitive damages are non-pecuniary in nature and, therefore, they are not recoverable under the Jones Act.[29]  *Townsend* does not create a new rule abrogating those cases or the proposition that punitive damages are non-pecuniary and, therefore, not recoverable under the Jones Act.  Therefore, the Court grants the motion to dismiss

---

[26]      *Wagner v. Kona Blue Water Farms, LLC*, No. 09-00600, 2010 WL 3566730 at *7 (D. Hi. Sept. 13, 2010).  The court specifically did not address whether punitive damages were a viable remedy under the general maritime law cause of action for unseaworthiness.  See Footnote 1 therein.

[27]      *Id.*

[28]      *Id.* at 7-8.

[29]      See, e.g., *Seaman v. Seacor Marine LLC*, No. 07-3354, 2008 WL 360783, at *2 (E.D. La. Jan. 17, 2008) ("In this circuit, punitive damages are classified as non-pecuniary in nature. . . . Therefore, as a Jones Act seaman Plaintiff cannot recover them."); *Anderson*, 797 F.Supp. at 534 ("[T]he post-*Miles* district court cases, in this district and in others, speak with one voice in concluding that punitive damages are non-pecuniary and, therefore, are not recoverable under *Miles's* interpretation of the Jones Act.")

as it applies to the plaintiffs' claims for punitive damages under the Jones Act,

whether arising out of wrongful death or personal injury.

**D.   ARE PUNITIVE DAMAGES A REMEDY AVAILABLE TO SEAMEN UNDER THE GENERAL MARITIME LAW FOR CAUSES OF ACTION OTHER THAN MAINTENANCE AND CURE?**

Multiple courts who have considered the impact of *Townsend* on the remedies

available to non-seamen arising out of a general maritime cause of action have

concluded that non-pecuniary damages, including punitive damages, are available

even in contravention of pre-existing appellate court precedent.[30]   Other courts have

allowed claims for non-pecuniary damages, including punitive damages, to proceed

given the current uncertainty in the law.[31]

---

[30]      See, e.g., *Lobegeiger v. Celebrity Cruises, Inc.,* No. 11-21620-CIV, 2011 WL 3703329, at *6-7 (S.D. Fla. Aug. 23, 2011), and *Doe v. Royal Caribbean Cruises Ltd.,* No. 11-23323-CIV, 2012 WL 920675, at *3-4 (S.D. Fla. Mar. 19, 2012) (finding that *In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Al.,* 121 F.3d 1421, 1429 (11th Cir. 1997), which held personal injury plaintiffs were not entitled to pursue "such non-pecuniary [punitive] damages" under the general maritime law, was no longer good law).  See, also, *Barrette v. Jubilee Fisheries, Inc.,* No. C10-01206 MJP, 2011 WL 3516061, at *6-7 (W.D. Wa. Aug. 11, 2011) (holding spouse of injured seaman entitled to recover loss of consortium arising out of unseaworthiness cause of action contrary to *Smith v. Trinidad, Corp.,* 992 F.2d 996 (9th Cir. 1993) (*per curiam*)); *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico,* MDL No. 2179, 2011 WL 4575696, at *11 (E.D. La. Oct. 4, 2011) (holding that seamen do not have a remedy of punitive damages for personal injuries but non-seamen do).

[31]      See, e.g., *Rogers v. Resolve Marine*, No. 09-4141, 2009 WL 2984199, at *1 n. 1 (E.D. La. Sept. 11, 2009) (punitive damages under general maritime law for an injured seaman); *In Re Maryland Marine*, 641 F.Supp.2d 579 (E.D. La. 2009) (loss of society for relatives of vessel passengers killed in state territorial waters not available but court would consider adding to avoid retrial).  See also *Ryan Marine Services, Inc. v. Houston Drydocks, Inc.*, No. 06-2245, 2011 WL 6209801, at *5 (W.D. La. Dec. 13, 2011).

The plaintiffs argue that the Supreme Court's decision in *Exxon Shipping v. Baker* suggests that punitive damages should be a viable remedy for their cause of action of unseaworthiness under the general maritime law despite the existence of their Jones Act claims. *Baker* involved claims against Exxon arising from the Exxon Valdez oil spill. The claimants were not Jones Act seamen; they were commercial fishermen, Native Alaskans, and landowners. The Supreme Court granted certiorari "to consider whether maritime law allows corporate liability for punitive damages on the basis of the acts of managerial agents. . . ."[32] The Ninth Circuit had affirmed the district court's jury instruction on punitive damages based on circuit precedent.[33] The Court was equally divided on the issue and, therefore, had to leave the Ninth Circuit opinion undisturbed stating, "[i]t should go without saying that the disposition here is not precedential on the derivative liability question."[34]

Pertinent to this Court's inquiry are the issues raised in other portions of the opinion where the Court was not equally divided. In Part III, Exxon, citing the Fifth Circuit's *en banc* decision of *Guevara v. Maritime Overseas Corp.*, argued that the "rule of maritime punitive damages was displaced by federal statutes, including the

---

[32]     *Exxon,* 554 U.S. at 481.

[33]     *Id.* See also *In Re Exxon Valdez*, 270 F.3d 1215, 1236 (9th Cir. 2001), citing *Protectus Alpha Nav. Co. v. North Pacific Grain Growers, Inc.* 767 F.2d 1379 (9th Cir. 1985).

[34]     *Exxon*, 554 U.S. at 484.

CWA."[35]  The Court rejected this argument indicating "nothing in the statutory text points to fragmenting the recovery scheme this way, and we have rejected similar attempts to sever remedies from their causes of action."[36]

In Part IV, to which Justice Stevens specifically dissented, the Court, citing *Miles,* reiterated that admiralty courts should look to legislative enactments for policy guidance, but where Congress had not *specifically* acted, the Court had responsibility to fashion controlling rules and remedies in maritime law:

> To the extent that Justice STEVENS suggests that the very subject of remedies should be treated as congressional in light of the number of statutes dealing with remedies, see post, at 2634 – 2636 (opinion concurring in part and dissenting in part), we think modern-day maritime cases are to the contrary and support judicial action to modify a common law landscape largely of our own making. The character of maritime law as a mixture of statutes and judicial standards, "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules," *East River S.S. Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 865, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), accounts for the large part we have taken in working out the governing maritime tort principles. See, e.g., ibid. ("recognizing products liability ... as part of the general maritime law"); *American Export Lines, Inc. v. Alvez*, 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980) (recognizing cause of action for loss of consortium); *Moragne v. States Marine Lines, Inc*., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) (recognizing cause of action for wrongful death). And for the very reason that our exercise of maritime jurisdiction has reached to creating new causes of action on more than one occasion, it follows that we have

---

[35]     *Id.* at 486-489.

[36]     *Id.* at 489.

a free hand in dealing with an issue that is "entirely a remedial matter." Id., at 382, 90 S.Ct. 1772. The general observation we made in *United States v. Reliable Transfer Co.*, 421 U.S. 397, 409, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), when we abrogated the admiralty rule of divided damages in favor of proportional liability, is to the point here. It is urged "that the creation of a new rule of damages in maritime collision cases is a task for Congress and not for this Court. But the Judiciary has traditionally taken the lead in formulating flexible and fair remedies in the law maritime, and Congress has largely left to this Court the responsibility for fashioning the controlling rules of admiralty law" (internal quotation marks and footnote omitted).

.     .     .

To be sure, "Congress retains superior authority in these matters," and "[i]n this era, an admiralty court should look primarily to these legislative enactments for policy guidance." *Miles v. Apex Marine Corp.*, 498 U.S. 19, 27, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990). But we may not slough off our responsibilities for common law remedies because Congress has not made a first move, and the absence of federal legislation constraining punitive damages does not imply a congressional decision that there should be no quantified rule, cf. *Rapanos v. United States*, 547 U.S. 715, 749, 126 S.Ct. 2208, 165 L.Ed.2d 159 (2006) (plurality opinion) (noting the Court's "oft-expressed skepticism towards reading the tea leaves of congressional inaction"). Where there is a need for a new remedial maritime rule, past precedent argues for our setting a judicially derived standard, subject of course to congressional revision.[37]

Thus, the Supreme Court has held, notwithstanding the existence of federal statutory schemes including the Clean Water Act and the Jones Act, that punitive damages are a viable remedy afforded under the general maritime law for causes of

---

[37]     *Id.,* at 508, n. 21.

action arising out of (1) a maritime tort suffered by non-seamen, and (2) the failure to pay maintenance and cure to seamen.

In *Yamaha Motor Corp., U.S.A. v. Calhoun,* the Court showed its willingness to allow punitive damages in another maritime context.[38]  When an accident in state territorial waters resulted in the wrongful death of a non-seafarer, the Court held state remedies for wrongful death/survival actions that include non-pecuniary damages are available to supplement the general maritime law, notwithstanding the uniformity sought by *Miles*.  However, the *Calhoun* Court stated:

> When Congress has prescribed a comprehensive tort recovery regime to be uniformly applied, there is, we have generally recognized, no cause for enlargement of the damages statutorily provided.  See *Miles*, 498 U.S., at 30-36, 111 S.Ct., at 324-328 (Jones Act, rather than general maritime law, determines damages recoverable in action for wrongful death of seamen); *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 232, 106 S.Ct. 2485, 2499, 91 L.Ed.2d 174 (1986) (DOHSA, which limits damages to pecuniary losses, may not be supplemented by nonpecuniary damages under a state wrongful-death statute); *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 624-625, 98 S.Ct. 2010, 2014-2015, 56 L.Ed.2d 581 (1978) (DOHSA precludes damages for loss of society under general maritime law).  But Congress has not prescribed remedies for the wrongful deaths of nonseafarers in territorial waters.  See *Miles*, 498 U.S., at 31, 111 S.Ct., at 325.  There is, however, a relevant congressional disposition.  Section 7 of DOHSA states:  "The provisions of any State statute giving or regulating rights of action or remedies for death shall not be affected by this chapter."  46 U.S.C. App. § 767.  This statement, by its terms, simply stops DOHSA from displacing state law in territorial waters.  See *Miles*, 498 U.S., at 25, 111

---

[38]     *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199 (1996).

S.Ct., at 321-322; *Tallentire*, 477 U.S., at 224-225, 106 S.Ct., at 2495-2496; *Moragne*, 398 U.S., at 397-398, 90 S.Ct., at 1785-1786. Taking into account what Congress sought to achieve, we preserve the application of state statutes to deaths within territorial waters.[39]

Finally, in *Mobil Oil Corporation v. Higginbotham*, the Court did not allow the general maritime law to be used to supplement the Death on the High Seas Act (DOHSA), 46 U.S.C. §30303, to afford non-pecuniary damages in the form of loss of society for the survivors of a decedent.[40]   Stating, "there is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted," the Court refused to "prescribe a different measure of damages" than the specific pecuniary damages provided by the statute itself.[41]

Against these precedents, the opinions of *Miles* and *Townsend* must be compared.  The *Townsend* majority concluded its opinion by stating that:

> Because punitive damages have long been an accepted remedy under general maritime law, and because nothing in the Jones Act altered this understanding, such damages for the willful and wanton disregard of the maintenance and cure obligation should remain available in the appropriate case as a matter of general maritime law."[42]

---

[39]   *Id.,* at 215-16.

[40]   *Mobil Oil Corporation v. Higginbotham,* 436 U.S. 618, 98 S.Ct. 2010 (1978).

[41]   *Id.,* 625.

[42]   *Townsend*, 129 S.Ct. at 2575.

At the end of this statement is footnote 12 which states "we hold that *Miles* does not render the Jones Act's damages provision determinative of respondent's remedies. . . ."[43]

Without *Miles*, it would seem clear that the three criteria utilized in *Townsend* militate in favor of allowing punitive damages as a remedy available to a Jones Act seaman for causes of action brought under the general maritime law.  That was the case in this circuit prior to *Miles* being decided by the Supreme Court, and absent *Miles*, the reasoning of *Townsend* would reinforce the holding of *Merry Shipping*.

The *Townsend* Court stated that "the reasoning of *Miles* remains sound."[44]  In affirming the Court of Appeals, *Miles* specifically held:

> Cognizant of the constitutional relationship between the courts and Congress, we today act in accordance with the uniform plan of maritime tort law Congress created in DOHSA and the Jones Act.  We hold that there is a general maritime cause of action for the wrongful death of a seaman, but that damages recoverable in such an action do not include loss of society.  We also hold that a general maritime survival action cannot include recovery for decedent's lost future earnings. [45]

However, the reasoning for excluding loss of society damages was, with respect, not statutorily based.  The Court stated:

---

[43]     *Townsend*, 129 S.Ct. at 2575 n. 12.

[44]     *Townsend*, 129 S.Ct. at 2572.

[45]     *Miles,* 498 U.S. at 37.

The Jones Act also precludes recovery for loss of society in this case. The Jones Act applies when a seaman has been killed as a result of negligence, and it limits recovery to pecuniary loss. The general maritime claim here alleged that Torregano had been killed as a result of the unseaworthiness of the vessel. It would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence. We must conclude that there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman.

Our decision also remedies an anomaly we created in *Higginbotham*. Respondents in that case warned that the elimination of loss of society damages for wrongful deaths on the high seas would create an unwarranted inconsistency between deaths in territorial waters, where loss of society was available under *Gaudet*, and deaths on the high seas. We recognized the value of uniformity, but concluded that a concern for consistency could not override the statute. *Higginbotham*, supra, 436 U.S., at 624, 98 S.Ct., at 2014. Today we restore a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law.[46]

DOHSA was enacted in March 1920.[47]   The Jones Act was an amendment to the Seaman's Welfare Act of 1915[48] that was enacted three months after DOHSA by the same Sixty-sixth Congress.[49]   The former was designed to overrule *The Harrisburg* to the extent it applied on the high seas, and the latter to overrule *The*

---

[46]   *Id.* at 32-33.

[47]   Ch. 111, Sec. 1(a), 41 Stat. 537, March 30, 1920.

[48]   Ch. 153, Sec. 20, 38 Stat. 1185, March 4, 1915.

[49]   Ch. 250, Sec. 33, 41 Stat. 1007, June 5, 1920, 46 U.S.C. 688.

*Osceola.*[50] Both created remedies where none previously existed.   In enacting DOHSA, Congress *specifically* limited recovery to "pecuniary loss."[51]  The Jones Act had no damage limitation, nor did FELA, the statute from which the damage provision was incorporated. However, when FELA was enacted, Congress limited recovery in the survival provision to losses suffered in the decedent's lifetime, and therefore, loss of future earnings was not available as a remedy.  This was statutorily incorporated into the Jones Act in 1920, and thus, the ruling to this effect in *Miles* is statutorily based.   However, it was the Court that created the pecuniary damage limitation in FELA based on the jurisprudence interpreting Lord Campbell's Act.[52] This pecuniary limitation was carried over by the Court into the Jones Act based on the *absence* of any limitation on damages in the statute.[53]   Congress did not specifically limit the damages in FELA or the Jones Act as it did in DOHSA.

In 2006, Congress completed the codification of Title 46 as positive law.[54] Section 2 provides:

---

[50]    *The Harrisburg,* 119 U.S. 199 (1886), *The Osceola,* 189 U.S. 158 (1903).

[51]    46 U.S.C. § 30303, formerly 46 U.S.C.§ 762.

[52]    *Miles,* 498 U.S. at 32.

[53]    *Id.*

[54]    Pub.L. 109-304, HR 1442, October 6, 2006.

(a) PURPOSE.—The purpose of this Act is to complete the codification of title 46, United States Code, "Shipping", as positive law, by reorganizing and restating the laws currently in the appendix to title 46. (b) CONFORMITY WITH ORIGINAL INTENT.—In the codification of laws by this Act, the intent is to conform to the understood policy, intent, and purpose of the Congress in the original enactments, with such amendments and corrections as will remove ambiguities, contradictions, and other imperfections, in accordance with section 205(c)(1) of House Resolution No. 988, 93d Congress, as enacted into law by Public Law 93–554 (2 U.S.C. 285b(1)).

In Subtitle III, various maritime liability provisions have been restated including the Jones Act and DOHSA. In §30104, which is the restatement of the Jones Act, the statute as it existed under 46 U.S.C. §688 was amended to delete the words "for damages" as "unnecessary."[55]   At the same time, §30303 of DOHSA specifically retained the pecuniary limitation.   Thus, while DOHSA retained the specific reference by Congress to pecuniary damages, Congress completely eliminated any reference to damages in the Jones Act.

In abrogating *Guevara v. Maritime Overseas Corp.,* the *Townsend* Court held that nothing in the Jones Act "altered th[e] understanding" that punitive damages have long been an accepted remedy under general maritime law, and that *Miles* "does

---

[55]      2006 *U.S. Code Cong. and Adm. News* p. 972

not render the Jones Act's damages provision determinative of respondent's remedies." [56]

Taking these statements out of the maintenance and cure context and applying them to other aspects of the general maritime law, there is nothing specifically in the Jones Act damages provision that was enacted in 1920 (which no longer exists) that would be determinative of the plaintiffs' remedies under the general maritime law in this case. Where Congress is silent, the Court is free to fashion remedies in general maritime law as it stated in *Exxon Shipping v. Baker.* It is equally free to restrict remedies where Congress is silent as it has done in *Miles.* The reasoning of *Miles* was to promote uniformity between the statutes and the general maritime law. DOHSA did not allow for non-pecuniary damages by statute. The Jones Act did not allow for non-pecuniary damages based on the jurisprudential interpretation of FELA. In promoting uniformity, the Court decided that the same rule would apply to the general maritime law applicable to a wrongful death/survival action of a Jones Act seaman and there is nothing in the holding of *Townsend* that alters that result.

The plaintiffs urge this Court to ignore *Guevara* and reinstate *Merry Shipping* as the rule of this circuit. This is an invitation that has some merit.[57]  One could

---

[56]      *Townsend,* 129 S.Ct. at 2575, n. 12.

[57]      See e.g. *Nelton v. Cenac Towing Co. LLC* 2011 WL 289040 (E.D. La. 1/25/2011) applying *Morales v. Garijak, Inc.,* 829 F.2d 1355 (5th Cir. 1987) to the determination of damages for

argue that the uniformity sought by *Miles* would be better served if punitive damages were allowed since the Court has recognized them as a viable remedy in multiple maritime contexts.[58]   Further, the standard that must be met to provide this remedy would not necessarily be more expansive of the negligence standard imposed by Congress in the Jones Act.

Lost in the discussions of *Miles,* which involved the wrongful death of a Jones Act seaman, is the directed verdict granted by the district court on a factual basis dismissing the plaintiff's punitive damage claim arising out of the unseaworthiness cause of action.   That ruling was affirmed on appeal where Judge Rubin, after ruling on the loss of society and future lost wage claims which were the subject of the holding by the Supreme Court, stated:

> Punitive damages are recoverable under the general maritime law "upon a showing of willful and wanton misconduct by the shipowner" in failing to provide a seaworthy vessel.   Because punitive damages are designed to punish the wrongdoer, more than simple negligence is required.   The defendant must have been guilty of " 'gross negligence,

---

failure to pay maintenance and cure.

[58]      For example, as discussed *infra,* a non-seaman injured in the same casualty has the remedy under the general maritime law, yet the seaman does not. See *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, MDL No. 2179, 2011 WL 4575696, at *11 (E.D. La. Oct. 4, 2011).

or actual malice or criminal indifference which is the equivalent of reckless and wanton misconduct.'"[59]

*Guevara* did not overrule *Merry Shipping*.  As stated in *Guevara*, it was *Miles* that "effectively overruled" *Merry Shipping*:

> After *Miles*, it is clear that *Merry Shipping* has been effectively overruled.  Its holding – that punitive damages are available in a wrongful death action brought by the representative of a seaman under the unseaworthiness doctrine of the general maritime law – is no longer good law in light of the *Miles* uniformity principle because, in the factual scenario of *Merry Shipping*, the Jones Act damages limitations control.[60]

Therefore, while this Court may disagree that there is anything in the Jones Act that would preclude the availability of punitive damages as a remedy under the general maritime law, whether for wrongful death or personal injury, an *en banc* panel of the Fifth Circuit has concluded that the Supreme Court foreclosed that possibility in *Miles* and *Townsend* did not abrogate *Miles*.

## CONCLUSION

In summary, the Court finds that nothing in *Townsend* makes punitive damages available to the plaintiffs in these consolidated lawsuits or abrogates the jurisprudential authority holding that punitive damages are not available to these

---

[59]     *Miles v. Melrose*, 882 F.2d 976, 989 (5th Cir. 1989) quoting *In Re Merry Shipping*, 650 F.2d 622, 624-626 (5th Cir. 1981).

[60]     *Guevara*, 59 F.3d at 1507.

plaintiffs.   Therefore, the Court finds that, to the extent the plaintiffs in these consolidated actions seek to recover punitive damages, they have failed to present a plausible claim for relief.   Accordingly, the defendant's motion to dismiss (Rec. Doc. 27) is GRANTED, and the plaintiffs' claims for punitive damages are DISMISSED.

Signed at Lafayette, Louisiana on this 16th day of May, 2012.

_____
PATRICK J. HANNA
MAGISTRATE JUDGE

-22-