# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | | |
|---|---|---|
| **VIRGIE ANN ROMERO MCBRIDE,** | : | **CIVIL ACTION NO. 6:11-CV-0557(LEAD)** |
| **Individually and on behalf of I.M.S.,** | : | **6:11-CV-1544( MEMBER)** |
| **ET AL** | | **6:11-CV-1686 (MEMBER)** |
| | | **6:11-CV-1726 (MEMBER)** |
| | | |
| **VERSUS** | : | **MAGISTRATE JUDGE PATRICK  HANNA** |
| | | |
| **ESTIS WELL SERVICES, LLC** | : | **BY CONSENT OF THE PARTIES** |

● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ●

## <u>PRE-TRIAL ORDER</u>

Trial Date:                          March 29, 2016

Pretrial Conference Date:            March 17, 2016

Type of Trial:                       Bench

Estimated Length of Trial:           4 days

Trial Attorney Attending:            Party/Claim Represented:

      Brian C. Colomb            Plaintiff:  Virgie Ann Romero McBride, individually and on behalf of I.M.S. (hereinafter collectively referred to as "McBride")

      Nicholas A. Blanda         Plaintiff:  Saul Touchet

      Alan K. Breaud             Defendant:  Estis Well Service, LLC

## 1.  <u>Jurisdictional Basis:</u>

This Court has jurisdiction pursuant to the Jones Act, 46 U.S.C.A. § 30104, et seq., and the General Maritime Law of the United States, 33 U.S.C. § 1333.

1

## 2.  <u>**Claims and Responses**</u>:

<u>CLAIMANTS:</u>

On March 9, 2011, a key way barge containing a truck mounted drilling rig (collectively "Estis Rig 23"), was operating in Bayou Sorrell, a navigable waterway in the State of Louisiana. The crew consisted of:

1. Robert Pinson – Toolpusher;
2. Timmy Duhon – Driller;
3. Saul Touchet – Derrickman;
4. Brian Suire – Floorhand/Roustabout;
5. Josh Bourque – Floorhand/Roustabout.

The barge was in deplorable condition.  Its hull contained several holes that allowed water to seep in causing the barge to list severely.  As a result, every morning the crew had to pump water out of the barge's hull in order to level the barge before they could start working.  Estis knew about the holes in the hull for several months prior to this incident; however, Estis failed to properly repair them.

On the day before the incident, the Rig's crew pulled approximately twelve-thousand feet of pipe, weighing approximately 90,000 pounds, out of the hole and racked it in the Rig's monkey board.  As was commonplace, overnight the barge's hull filled with water causing it to list severely to its starboard side.  As a result, the racked pipe shifted towards the starboard side of the barge, twisting and mangling the monkey board and allowing the pipe to lean precariously away from the derrick.

When the crew arrived at work the following morning and saw this extremely dangerous situation, they asked their supervisor, Kim Hebert, to have a crane brought out so that they could safely unload the pipe.  Hebert called Estis's owner to convey the crew's concerns and request. Mr. Estis refused, instead telling Hebert that it would cost too much money and take too much time.  Instead, the crew was instructed to straighten out the mangled monkey board and the pipe using only cables and equipment available on the Rig.  The crew did as instructed but were unable to straighten out the pipe and monkey board.  At this point, the crew again went to Hebert for advice and instruction.

Seeing the ultra-hazardous situation, Hebert again called Estis's owner who again refused to provide additional equipment.  Instead, some of the crew members were sent to Estis's Rig 68, which was located in the same bayou, to retrieve additional cables and Skye Sonnier, an Estis derrickman assigned to Rig 68.  Mr. Sonnier had never worked on, and was unfamiliar with, Rig 23.

2

As instructed, the crew connected the additional cables and started to pull on them.  The pipe started shifting towards the port side of the barge where Sonnier, Suire, Touchet, and Bourque were standing.  As could have been predicted, the momentum of the tens-of-thousands-of-pounds of drill pipe kept falling towards the starboard side of the barge, pulling the derrick and truck with it.  The crew ran for their lives in a frantic attempt to evacuate the barge, jumping over equipment and onto a nearby supply barge.

Being unfamiliar with Rig 23, the route Sonnier took to get off the barge was blocked by a large mud tank.  As he turned to seek an alternate escape route off the barge, he saw the toolbox mounted to the side of the truck falling towards him.  He put up his arm to shield his face, to no avail.  The toolbox fell onto his chest pinning him against the corner of a mud tank.

After all of the falling pipe, derrick, and other equipment crashed down and came to rest, the crew members called out to each other.  At that time, they heard Sonnier scream and ran towards the direction of his scream.  They found Sonnier pinned and gasping for air and trying to talk.  In desperation, they tried to push the truck off of him.  When these efforts failed, one of the crew members jumped back onto the supply barge and tried to use the barge's cherry picker crane to move the truck off of Sonnier; however, it was too late.  Mr. Sonnier died as the result of his injuries, which included compressive blunt force injuries of the thorax, multiple rib fractures, lung punctures by rib shards and a ruptured heart.  Mr. Sonnier left behind one beneficiary, his 3 year old daughter, I.M.S.

Virgie McBride, the maternal grandmother of I.M.S. and court appointed administratrix of Skye Sonnier's estate, brings claims under the Jones Act and general maritime law for unseaworthiness for all available Survival and Wrongful Death damages including, but not limited to, Skye Sonnier's pre-death mental and physical pain and suffering, and I.M.S.'s loss of support; parental nurture, care and guidance; services; and loss of inheritance.

Claimant, Saul Touchet, claims all damages available under the Jones Act and General Maritime law including past medical expenses, future medical expenses, past lost wages, future lost wages and/or impairment of earning capacity, past/future pain and suffering, past/future mental anguish, past/future disability and past/future loss of enjoyment of life.  Touchet suffered numerous physical, psychological and/or emotional injuries as a result of the incident.  Specifically, he injured low back (L4-5 internal disc disruption), upper back (thoracic protrusions), neck (numerous bulging discs) and left arm.  To date, he has undergone a left arm ulnar nerve transposition, carpal tunnel release and extensive conservative treatment consisting of office visits, injections, prescription medicine, physical therapy/chiropractic care and counseling.  At this point, plaintiff's treating physicians are recommending an L4-5 fusion, with instrumentation, as definitive treatment for his low back injury.

3

Furthermore, Touchet has been diagnosed with Acute Stress Disorder, Post-Traumatic Stress Disorder, Pain Disorder with Psychological Factors (Depression, Anxiety, Residual PTSD) which have required active medical care since shortly after the accident.

Touchet's treating physicians have assigned a 32% anatomical disability rating and permanently restricted him from all prior oilfield work. All treating physicians relate all injuries, medical treatment and disability to the subject incident.

Touchet's past medical expenses total approximately $120,677.78, to date. Future medical expenses total $688,032 – 1,016,647. Past lost wages total $160,786. Future lost wages/Impairment of Earning Capacity total $294,453 – 438,452. Back due Maintenance totals approximately $75,000. Substantial general damages are claimed.

Estis has not paid Maintenance and/or Cure to Touchet since approximately April, 2011. Following the incident, Touchet has worked a variety of odd jobs in an attempt to support his family but has primarily worked as a self-employed fisherman (crabs, shrimp, etc.). Touchet seeks compensation for all back-due Maintenance and Cure and specifically claims all remedies available under applicable law for Estis' unreasonable, arbitrary and/or capricious failure to pay Maintenance and Cure.

## DEFENDANT: ESTIS WELL SERVICE, L.L.C.

Estis Well Service, L.L.C. ("Estis") filed a Stipulation to Liability [Doc. 73], admitting liability in this matter. Accordingly, the Plaintiffs' comments contained in their contentions with respect to liability should be stricken as irrelevant and inflammatory. This transparent attempt to discredit Estis has no place in this litigation.

Estis has always taken responsibility for the death of Skye Sonnier, but specifically rejects the claims of Saul Touchet ("Touchet"). Furthermore, the evidence in this case will show that Skye Sonnier died instantly at the time of the incident. That was the testimony of Suire and Touchet on the day of the incident. For instance, Suire gave a statement on the day of the incident which included:

WK:   He got pinned on the production tank, correct?

BS:   On the mud tank. The tool box on the rig pinned him against the wall. And , uh, after everything fell and the only person I didn't see was Skye. I hollered his name and by the time I found him, he… by the time I got to him in time to get him out, he took his last breath.

Saul Touchet testified in his statement, on the date of the incident, as follows:

WJK:   And y'all… you went towards the bow of the Rig 23?

SCT:   Yea and I jumped on the next barge and ran down this way and when I turned around.  You know, after I was running to get away from everything to see if everyone was okay, I jumped back across the rig, was running wide open and diesel was pouring out.  So, when I jumped back across to go kill it, my boss, Robert, had already ran up there and killed it, you know, but we started hollering for everybody cause they thought it was me underneath there, you know.  So they started looking for me and I came right around the corner and say, "Yea, I'm all right.  Yea, y'all found Skye?"  And that's when we walked around the corner and found him where he was.

WJK:   Was he still…

SCT:   He was still breathing at the time we got to him, but we tried to get him.

WJK:   Was he unconscious?

SCT:   Yea, it looked like it.  His tongue was slipped back and he was kinda just (sound), you know.

WJK:   So he died pretty fast?

SCT:   Yes sir.

WJK:   So he didn't suffer?

SCT:   No sir, no suffering.

Joshua Bourque, who was once a party to this litigation, testified in his statement, on the day of the incident, that:

WJK:   Okay, who found him?

JLB:   (um) Me and Brian Suire.

WJK:   And (uh) was he still alive when ya'll found him?

JLB:   (um) I would say yea, but I mean…

WJK:   You don't know?

JLB:   He kinda took his last breath right when we found him, I believe.

WJK:   So, he died pretty fast?

JLB:   Pretty fast, yea.

WJK:   He didn't suffer?

JLB:   No, I don't believe.

The autopsy report addressing Skye Sonnier's death determined that the cause of death was "multiple blunt force trauma injuries". The pathologist, Dr. Richard E. Tracy, has now testified that the extent of Skye Sonnier's injuries was "massive". There was a fracture of every rib on the left side in at least two places, and no less than one fracture of every rib on the right side. Sonnier received a blow from the back which tore his lungs "wide open" and there was a tear in the heart. Dr. Tracy opined that the extent of the injuries probably resulted in "immediate heart stoppage". He determined that this stoppage of the heart was "near instantaneous" and most certainly within seconds. The tearing of the lungs drained the blood from Sonnier's veins.

Dr. Tracy also testified that Sonnier could not have remained conscious for more than one (1) to two (2) minutes. Nevertheless, Dr. Tracy did not testify that Sonnier would have had any conscious pain and suffering from such massive injuries and instantaneous heart stoppage.

As stated in Plaintiffs' contentions, Skye Sonnier was not a member of the regular crew of Rig 23. He was generally assigned to Rig 67. He was brought over to help in the work being performed on the morning of the incident, but for Touchet to suggest that they were close personal friends and work buddies is an exaggeration.

Touchet, as well as the other crewmembers, were provided grief counseling by Estis immediately after the incident. This effort on the part of Estis more-likely-than-not precipitated the claim of Touchet. However, as will be demonstrated specifically hereinbelow, the timing of Touchet's complaints mitigate against a temporal relationship between them and this incident. Furthermore, the claims being made on behalf of Skye Sonnier's minor child are limited under law to specific categories which, to a large degree, are not supported by the facts, particularly with respect to the minor child's support claim.

### Saul Touchet

Touchet initially denied any physical injury arising from the subject accident, and it was not until three months after the accident that he first sought medical attention.  At that point, he claimed that while attempting to pull debris from Sonnier, he strained his low and mid-back and also experienced neck pain and left leg numbness.  He was initially seen by Dr. David Barczyk, a chiropractor, before eventually being seen by Dr. John Cobb.  MRI scans of the cervical and lumbar spines were interpreted by Dr. Cobb to be substantially normal.

In July 2011, video surveillance revealed Touchet performing substantial physical activities in direct conflict with his alleged pain complaints.  Video revealed Touchet fishing with a cast net, crabbing, boating, lifting bags of ice, bending over, handling large objects, launching a boat, and other activities of a strenuous physical nature.  At no point did Touchet ever exhibit any signs of physical discomfort or limitation.  Touchet, who is alleging extreme and severe pain to his physicians, continued a very physical and active lifestyle.  In October 2015, Touchet admitted to shrimping, cast netting, and crabbing with 500 crab traps set in the waters around Delcambre.

Throughout his treatment, Touchet's complaints have been inconsistent and have shifted from left arm pain for which he eventually underwent ulnar and carpal tunnel surgery, to his neck, and ultimately, his low back.  Diagnostic studies do not reveal any significant issue which would explain the severe nature of Touchet's complaints.

Once Dr. Cobb passed away, Touchet's care was taken over by Dr. Louis Blanda, who also happens to be the father of Touchet's attorney.  Dr. Blanda's partner, Dr. John Sledge, has recommended lumbar surgery involving a decompression at L4-5 and fusion even though the diagnostic studies, including flexion extension x-rays and MRI scans, have revealed no surgical issue.  Although Touchet has no disc herniations, Dr. Sledge has opined that Touchet has a "disc disruption" at L4-5 for which surgery has been recommended.

Touchet is also complaining chronic post-traumatic stress disorder, anxiety and depression.  Records document that in addition to pre-existing drug abuse, depression, and anxiety issues, Touchet's alleged emotional injuries do not arise from a fear for his own safety, but from experiencing the death of Skye Sonnier.  The records from the mental health professionals do not contain a single reference to Touchet's alleged fear for his own safety.  Rather the records document Touchet's emotional issues surrounding the "bad sight," i.e., the death of his "friend," Skye Sonnier.  The Fifth Circuit in *Naquin v. Elevating Boats, L.L.C.*, 744 F.3d 927 (5th Cir. 2014), has held that emotional damages resulting purely from another person's injury, and not a fear of injury to one's self, are not compensable under the Jones Act  even in cases when the plaintiff has also been injured.  Touchet's treatment for emotional injury contains no reference to any fear for his own safety at the time of the accident, but arise from Touchet's witnessing Sonnier's death.  Such is not compensable under the Jones Act.  Mental health

professional Aimee Broussard, APRN, has testified that Touchet's emotional issues arise from witnessing the death of Skye Sonnier as opposed to any fear for his own safety.

### Virgie Ann McBride o/b/o Ireland Sonnier

Skye Sonnier, father of I.M.S., died as a result of the subject accident. There are few claims available for the wrongful death of a seaman. Pecuniary damages are the only items of damage recoverable. Pecuniary damages consist of loss of love, support, and funeral expenses. Funeral expenses have been paid by or on behalf of Estis.

I.M.S., Sonnier's three year old daughter at the time of the accident, is the only person allegedly dependent upon Sonnier prior to his death. There is no evidence that Ireland ever received any direct financial support from Sonnier. Virgie McBride, mother of Skye, testified that Ireland's mother, Haleigh McBride, was using the few and sporadic payments received from Skye Sonnier to support her drug habit. At the time of Skye's death, Ireland was living with Virgie McBride and her husband who were supporting Ireland. There is no evidence that Ireland was actually financial dependent upon Sonnier at the time of his death and that any future pecuniary benefits from support or services were anticipated.

During the short period of time between the birth of the minor child and Sonnier returning to prison, the child's mother, Haleigh McBride, had filed a restraining order against Sonnier for physical abuse. Furthermore, a Child Support Order was filed against Sonnier. The records of payments pursuant to that Child Support Order demonstrate only five (5) months of payments being made.

Loss of services has been held to include the loss to children of the nurture, instruction, and physical, intellectual and moral training that they would have received from their parent, but for the parent's wrongful death. The death of a parent standing alone is an insufficient predicate to support recovery by the child of the loss of parental nurture. Evidence must show that the decedent was fit to furnish such training and that training and guidance had actually been rendered by the parent. For most of Ireland's life, Sonnier had been in prison. Therefore, there is little evidence proving a pecuniary claim for loss of services. There will be no evidence submitted at trial that Sonnier left any money to be inherited by the minor child and it would be purely speculative to suggest that there would be an loss of inheritance in this case.

One element of a Jones Act survival claim is the seaman's pain and suffering prior to expiring. There is no evidence of any conscious pain and suffering on the part of Skye Sonnier prior to his death. Crewmember statements reveal that Sonnier was unconscious and took just a few breaths before expiring.

3.   **Issues of Fact and Issues of Law:**

**CLAIMANTS:**

**McBride**

1. The amount of damages to which I.M.S. is entitled for the <u>wrongful death</u> of her father, Skye Sonnier, under all applicable categories including, but not limited to, loss of support, parental nurture, care and guidance, services, and loss of inheritance.

2. The amount of damages to which Skye Sonnier's estate is entitled for his pre-death physical and mental pain and suffering (<u>survival action</u>).

**Saul C. Touchet**

1. The nature and extent of plaintiffs' compensatory damages (special and general).

2. Medical causation.

3. The amount of Maintenance and/or Cure owed to the plaintiff (past and future).

4. Whether Estis' denial, termination and/or failure to pay Maintenance and/or Cure was inappropriate, improper, unreasonable and/or callous and recalcitrant, arbitrary and capricious.

5. The type and amount of damages (compensatory, punitive/exemplary, etc.) owed to plaintiff as a result of Estis' improper, unreasonable and/or arbitrary and capricious handling of plaintiff's claims for Maintenance and Cure.

**DEFENDANT: ESTIS WELL SERVICE, L.L.C.:**

1. The nature and extent of the actual financial dependency, if any, of I.M.S. on Skye Sonnier at the time of his death.

2. The nature and extent of the parental services, if any, provided by Skye Sonnier to I.M.S.

3. The death of Skye Sonnier and the nature and extent of any pre-death pain and suffering.

4. The nature and extent of Touchet's compensatory damages (special and general), if any.

5. Medical causation as to Touchet's alleged injuries particularly in light of the medical records and 5th Circuit jurisprudence. *(Naquin v. Elevating Boots)*.

6.   The amount of Maintenance and/or Cure, if any, owed to Touchet (past and future).

7.   The nature and extent of Touchet's alleged physical injuries, if any, in light of his admitted activities as well as those depicted in the surveillance video.

**4.   <u>Stipulations:</u>**

1.   Skye Sonnier was born on March 25, 1980, and died on March 9, 2011.

2.   I.M.S. is the biological daughter and sole surviving heir of Skye Sonnier. Haleigh McBride is I.M.S.'s mother.

3.   Virgie McBride and Charlie McBride are the maternal grandparents of I.M.S.. Virgie McBride is the administratrix of the estate of Skye Sonnier, and the proper person to bring the claims arising from the injuries and death of Skye Sonnier.

4.   I.M.S. was born on January 30, 2008.

5.   The incident at issue arose solely as a result of the negligence of Estis and the unseaworthiness of its vessel.

**5.   <u>Will Call Witnesses:</u>**

**<u>CLAIMANTS:</u>**

**<u>McBride</u>**

1)   **TEDDY JAMES SONNIER (Live or Via Depo. if unable to appear at trial)**
New Iberia, LA 70563
3rd floor, Petro Vietnam Tower
01-05 Le Duan St., Ben Nghe Ward
Dist. 1, Ho Chi Minh City, Vietnam

(Skye Sonnier's father and I.M.S.'s grandfather. Expected to testify regarding his personal history and work history, his son's work history and abilities, and Skye's relationship with his daughter and how he provided for her.)

2)   **VIRGIE ANN ROMERO MCBRIDE**
New Iberia, LA 70563
(I.M.S.'s maternal grandmother and adoptive parent. Expected to testify regarding Skye Sonnier's relationship with I.M.S. and how he provided for her.)

3)   **CHARLIE MCBRIDE**
     New Iberia, LA 70563
     (I.M.S.'s maternal grandfather and adoptive parent.  Expected to testify regarding Skye Sonnier's relationship with I.M.S. and how he provided for her.)

4)   **HALEIGH MCBRIDE**
     New Iberia, LA 70563
     (I.M.S.'s mother.  Expected to testify regarding her relationship with Skye Sonnier. I.M.S.'s relationship with Skye Sonnier, and how he provided for her.)

5)   **ROBERT PINSON**
     Egan, LA 70531
     (Estis's Toolpusher aboard Rig 23 at the time of the incident.  Expected to testify regarding the incident, Skye Sonnier's work ethic and abilities, Skye Sonnier's injuries and the duration that he survived following the accident.)

6)   **BRIAN SUIRE**
     New Iberia, LA 70563
     (Estis's employee aboard Rig 23 at the time of the incident.  Expected to testify regarding the incident, Skye Sonnier's work ethic and abilities, Skye Sonnier's injuries and the duration that he survived following the accident.)

7)   **SAUL TOUCHET**
     Delcambre, LA 70528
     (Estis's Floorhand aboard Rig 23 at the time of the incident.  Expected to testify regarding the incident, Skye Sonnier's work ethic and abilities, Skye Sonnier's injuries and the duration that he survived following the accident.)

8)   **CARISSA L. SPILLMAN and/or a REPRESENTATIVE OF LAFAYETTE PARISH WORK RELEASE**
     Lafayette, LA 70502
     (Representative of Lafayette Parish Work Release Program that Skye Sonnier was in at the time of his death.  Will testify regarding the terms and conditions of the program and Skye Sonnier's history in the program.)

9)   **STANFORD H. MCNABB, LRC, CRC**
     Lafayette, LA 70508
     (Vocational Rehabilitation Expert.  Expected to provide expert testimony regarding Skye Sonnier's lost wages, future earning capacity, and fringe benefits.)

10)  **DR. G. RANDOLPH RICE**
     Baton Rouge, LA 70809
     (Economist.  Expected to provide expert testimony regarding the value of I.M.S.'s loss of future support including fringe benefits and loss of services as a result of the death of her father, Skye Sonnier.)

11) **CORPORATE DEPOSITION OF ESTIS WELL SERVICES, INC. through its designated representative JOHNNY LEE ESTIS**

12) **DR. RICHARD E. TRACY (VIA TRIAL DEPOSITION)**
New Orleans Forensic Center/New Orleans Coroner's Office
New Orleans, LA 70125
(Pathologist who performed the autopsy on Skye Sonnier. Expected to provide expert testimony regarding the cause of Mr. Sonnier's death, the duration of his survival and suffering post-impact, and his awareness of his pre-death suffering.)

13) Any witness needed to authenticate any documents and/or other evidence; and

14) Any witness listed by any other party to the extent not objected to by Claimant.

**Saul C. Touchet**

A. **Medical Expert Witnesses:**

1. Dr. John Sledge, Orthopedic Surgery – plaintiff's post-accident medical treatment, diagnostic testing, causation, future medical treatment, disability, functional restrictions;

2. Dr. Louis Blanda, Orthopedic Surgery – plaintiff's post-accident medical treatment, diagnostic testing, causation, future medical treatment, disability, functional restrictions;

3. Dr. David Barczyk (Via Trial Deposition), Chiropractic Medicine – plaintiff's post – accident medical treatment, diagnostic testing, causation;

4. Aimee Broussard, APRN, Psychiatric Nurse Practitioner – plaintiff's post-accident medical treatment, causation;

5. Dr. James Blackburn, Psychiatry – plaintiff's post-accident medical treatment, diagnostic testing, causation, future medical treatment, disability, functional restrictions;

6. Dr. Mark Warner, Clinical Psychology/Neuropsychology – plaintiff's post-accident medical treatment, diagnostic testing, causation, future medical treatment, disability, functional restrictions.

B. Non-Medical Expert Witness:

1. Stanford McNabb, Vocational Rehabilitation, Life Care Planning/Future Medical Cost Analysis – lost wages/earning capacity, costs of future medical care;

12

2.    Dr. G. Randolph Rice, Economics – present value of plaintiff's claims for past lost wages, future lost wages/earning capacity and future medical expenses.

C.    <u>Lay witnesses:</u>

1.    Saul Touchet, Claimant – facts and circumstances surrounding accident; damages;

2.    Robert Pinson, Toolpusher aboard Rig 23 at the time of the accident – facts and circumstances surrounding accident; Saul Touchet's work history and abilities; Saul Touchet's injuries;

3.    Johnny L. Estis, in his capacity as the corporate representative of Estis Well Service, LLC, regarding:

    A.    Facts and circumstances surrounding Saul Touchet's employment with Estis, including:

        i.    Employment/work history;
        ii.    Earnings history;
        iii.    Job assignments and hours worked;
        iv.    Job titles, employment positions and/or work responsibilities;
        v.    Employment evaluations;
        vi.    All personnel actions, efficiency ratings, employment reprimands, disciplinary actions, write ups, etc.;
        vii.    Results of all drug and alcohol tests.

    B.    Estis' policies and/or procedures in effect during Mr. Touchet's employment tenure regarding employee evaluations, promotions, reprimands and/or disciplinary actions;

    C.    Facts, circumstances and/or reasons surrounding Estis' decision to terminate and/or deny Maintenance to Mr. Touchet;

    D.    Facts, circumstances and/or reasons surrounding Estis' decision to terminate and/or deny Cure to Mr. Touchet;

4.    Any witness listed by any other party to the extent not objected to by Claimant.

5.    Any witness required to authenticate any exhibit;

6.    Any witness required for impeachment purposes.

## 6. May Call Witnesses:

CLAIMANTS:

### Skye Sonnier (deceased)

1) **I.M.S.**
New Iberia, LA 70563
(Skye Sonnier's daughter.  May testify regarding her relationship with Skye Sonnier and how his death has affected her)

2) **JEFFREY SONNIER**
(Skye Sonnier's grandfather.  Expected to testify regarding his personal and work history, Skye Sonnier's work history and abilities, Skye's relationship with I.M.S. and how he provided for her.)

3) **JOSHUA BOURQUE**
Loreauville, LA 70552
(Estis's Floorhand aboard Rig 23 at the time of the incident.  Expected to testify regarding the incident, Skye Sonnier's work ethic and abilities, Skye Sonnier's injuries and the duration that he survived following the accident.)

4) **MARY BETH SUIRE (WIFE)**
**New Iberia, LA 70563**
(Brian Suire's wife.  Expected to testify regarding Brian Suire's employment with Estis)

### Saul C. Touchet

### A. Medical Expert Witnesses:

1. Dr. Dan Hodges, Physical Medicine & Rehabilitation – plaintiff's post-accident medical treatment, diagnostic testing, causation;

2. Dr. Matthew Mitchell, Interventional Pain Management – plaintiff's post-accident medical treatment, diagnostic testing, causation.

### B. Lay Witnesses

1. Aimee Bourque, Claimant's common-law wife – damages.

2. Representative of CIA of LA/Channing's Investigative Agency – details regarding surveillance performed on Saul Touchet (hours worked, amount paid, footage obtained, etc.).

3.    Brian Suire – facts and circumstances surrounding the accident; damages.

**Defendant, ESTIS, objects to any "may call" witnesses listed in the Pre-Trial Order or to be called at trial.**

## DEFENDANT:  ESTIS WELL SERVICE, LLC

1.    Kenneth J. Boudreaux and/or
      Dan N. Cliffe, and/or
      J. Stuart Wood and/or John R. Page
      New Orleans, LA 70115

      Economic expert who may testify regarding their evaluation of the alleged economic losses of Saul Touchet and/or Brian Suire.

2.    Channing Perry and/or Blaine Gary
      Channing's Investigative Agency
      Lafayette, LA 70506

      Investigators who may testify regarding criminal background check and surveillance of Saul Touchet including the videotape.

      **OBJECTION:**  Plaintiff, Saul Touchet, objects to any testimony regarding the criminal background check of Saul Touchet.  This information is irrelevant, unduly prejudicial and inadmissible per FRE 402, 403, 404, 608, 609.  Plaintiff also objects on the grounds that the criminal background check is hearsay. Plaintiff objects to testimony regarding the videotape as irrelevant and unduly prejudicial.  If the surveillance video is deemed admissible, it speaks for itself. Plaintiff further objects to any testimony from defendant's investigators regarding their alleged personal surveillance of the plaintiff that was not videoed.  Since the investigator's handwritten notes and reports (which presumably contained this information were deemed to be not discoverable, it would be inequitable to allow the investigators to testify regarding this information.

3.    Aimee Broussard, APRN, BC
      Broussard, LA 70518-4350

      Expert witness who will testify regarding her treatment/evaluation of Saul Touchet and causation.

4.    Haleigh Janee McBride, Plaintiff – under cross-examination;

5.     Joshua Lee Bourque
       Loreauville, Louisiana 70552
       (337) 352-0117

       Estis Floorhand aboard Estis Rig 23 on March 9, 2011, who may testify regarding
       the operation being conducted at the time of the incident and Skye Sonnier's
       condition immediately following the incident.

6.     Johnny Estis
       Estis Well Service, L.L.C.
       New Iberia, Louisiana 70560
       (337) 369-3853

       Owner of Estis who may testify regarding the employment of plaintiffs and other
       issues pertinent to their claims including advances, maintenance, and cure and
       related payments.

7.     Robert Pinson
       Egan, Louisiana 70531
       (337) 201-3018

       Estis Toolpusher who may testify regarding the details of the operation ongoing at
       the time of the accident, the pre-job meeting held prior to commencement of the
       operation, the activity aboard the rig following the accident, and the medical
       status of himself and his fellow crewmembers following the accident.

8.     Timmy Duhon
       Delcambre, Louisiana 70528
       (337) 201-7-95

       Estis Driller who may testify regarding the details of the operation ongoing at the
       time of the accident, the pre-job meeting held prior to commencement of the
       operation, the activity aboard the rig following the accident, and the medical
       status of himself and his fellow crewmembers following the accident.

9.     Mr. Walter Kimel
       Aucoin Claims Service, Inc.
       Gretna, LA 70054-1744
       (504) 392-3100

       Claims Representative who may testify regarding the authenticity of the recorded
       statements of crewmembers, Robert Pinson, Timmy Duhon, Saul Touchet, Brian
       Suire and Joshua Lee Bourque, which he took on behalf of Estis on March 9,
       2011.

10.    Dr. Richard E. Tracy, Pathologist (BY DEPOSITION)
New Orleans Forensic Center
New Orleans Coroner's Office
New Orleans, Louisiana 70112
(504) 658-9660

Pathologist who performed the autopsy on Skye Sonnier and who may testify as to the injuries sustained by Mr. Sonnier as a result of the accident, the length of time Mr. Sonnier probably lived following the accident, and the medical cause(s) of Mr. Sonnier's death.

**7.  Exhibits:**

CLAIMANTS:

**McBride**

1)    Estis's Stipulation to Liability [Rec. Doc. 73];

2)    Birth Certificate of I.M.S.;

3)    Baptism Certificate of I.M.S.;

4)    Order appointing Haleigh McBride as Administratrix of Estate of Skye Sonnier;

5)    Daily Drilling report for 3/9/11 (EWS 0003);

6)    Judgment of Final Adoption (Charlie and Virgie McBride adopting I.M.S.);

7)    Order Appointing Virgie McBride as Administratrix of Estate of Skye Sonnier;

8)    Order authorizing Virgie McBride to pursue all claims arising out of the injury and death of Skye Sonnier. [Rec. Doc. 72];

9)    Photographs of Skye Sonnier and I.M.S.;

10)   Photographs of Skye Sonnier;

11)   Photographs and video of the accident scene;

12)   Report of Marine Accident, Injury or Death (EWS 0001-0002);

13)   Skye Sonnier's Personnel File with Estis (EWS 0005-0084);

14)   Skye Sonnier's Death Certificate (EWS 0085);

15)     Letter from Moncla Well Service stating that it is no longer in possession of Skye
        Sonnier's personnel file;

        **OBJECTION:**  Hearsay, F.R.E. 801, *et seq.*

16)     Autopsy Report of Skye Sonnier from New Orleans Forensic Center / Dr. Richard
        E. Tracy, Pathologist;

17)     September, 2008 statement from Key Energy regarding Skye Sonnier's 401(k)
        plan;

18)     Estis's Work Summary and earnings history for Skye Sonnier. (EWS 00798-
        01021);

19)     Skye Sonnier's 2010 and 2011 W-2s from Estis;

20)     Rule 26(f) Report. [Rec. Doc. 34].

        **OBJECTION:**  Estis objects to the listing of the Rule 26(f) Report as an exhibit
        in this matter.  Rule 26(f) Reports are not admissible on their face.  Furthermore,
        the Rule 26(f) Report includes information that, by design, would not be later
        admissible in Court.  Estis reserves its right to assert further objections to this
        exhibit if certain portions of the Rule 26(f) Report are attempted to be admitted.

        **PLAINTIFF'S RESPONSE:**       While Estis may be correct regarding the
        overall admissibility of the Rule 26(f) report, it should be bound by the
        "stipulations" to which it agreed in said report.  For example, in the Report Estis
        stipulated that Sonnier and Touchet were employed by Estis at all pertinent times.
        However, Estis now objects to putting said stipulation in this Pre-Trial Order.

21)     Pertinent portions of La. Dept. of Public Safety and Corrections Standard
        Operating Procedures for Offender Work Release Programs;

        **OBJECTION:**  Hearsay, F.R.E. 801, *et seq.*

        **PLAINTIFF'S RESPONSE:**       The manual satisfies the "business records"
        exception, F.R.E. 803(6)(B), and he public records exception, 803(8)(A), to the
        hearsay rule. Moreover, the manual was produced by Carissa Spillman with the
        Lafayette Sheriff's Office in response to a subpoena issued by plaintiff seeking
        documents regarding Skye Sonnier's time in the work release program.  Plaintiffs
        will be calling Ms. Spillman to testify at trial, including regarding some of the
        pertinent parameters of the work release program.

22)     Pertinent portions of La. Dept. of Public Safety and Corrections Standard Operating Procedures for Transitional Work Programs;

**OBJECTION:** Hearsay, F.R.E. 801, *et seq.*

**PLAINTIFF'S RESPONSE:**      The manual satisfies the "business records" exception, F.R.E. 803(6)(B), and he public records exception, 803(8)(A), to the hearsay rule. Moreover, the manual was produced by Carissa Spillman with the Lafayette Sheriff's Office in response to a subpoena issued by plaintiff seeking documents regarding Skye Sonnier's time in the work release program. Plaintiffs will be calling Ms. Spillman to testify at trial, including regarding some of the pertinent parameters of the work release program.

23)     Pertinent portions of  Lafayette Parish Sheriff's Office Transitional Work Program Resident Handbook;

**OBJECTION:**  Hearsay, F.R.E. 801, *et seq.*

**PLAINTIFF'S RESPONSE:**      The manual satisfies the "business records" exception, F.R.E. 803(6)(B), and he public records exception, 803(8)(A), to the hearsay rule. Moreover, the manual was produced by Carissa Spillman with the Lafayette Sheriff's Office in response to a subpoena issued by plaintiff seeking documents regarding Skye Sonnier's time in the work release program. Plaintiffs will be calling Ms. Spillman to testify at trial, including regarding some of the pertinent parameters of the work release program. One of the issues that Ms. Spillman, and this manual, address is the maximum amount of money an inmate can send each month for family support; namely, $300.00.  The information contained in plaintiff's exhibit 22 clearly indicates that Mr. Sonnier routinely sent that amount to support Ireland while he was in work release. However, despite being well aware of these facts, defendants continue to represent to the court that Mr. Sonnier did not pay child support on behalf of Ireland and that she was not financially dependent on him thereby requiring plaintiff to introduce this manual and call Ms. Spillman at trial.

24)     Lafayette Parish Sheriff's Office Work Release Inmate Transaction Details for Skye Sonnier;

**OBJECTION:**  Hearsay, F.R.E. 801, *et seq.*

**PLAINTIFF'S RESPONSE:**      These records satisfy the "business records" exception, F.R.E. 803(6)(B), and he public records exception, 803(8)(A), to the hearsay rule. Moreover, the records were produced by Carissa Spillman with the Lafayette Sheriff's Office in response to a subpoena issued by plaintiff seeking documents regarding Skye Sonnier's time in the work release program. Plaintiffs will be calling Ms. Spillman to testify at trial, including regarding some of the pertinent parameters of the work release program and the payments reflected on

this ledger. One of the issues that Ms. Spillman, and these records, address is the maximum amount of money an inmate can send each month for family support; namely, $300.00. The information contained in this exhibit clearly indicates that Mr. Sonnier routinely sent that amount to support Ireland while he was in work release. However, despite being well aware of these facts, defendants continue to represent to the court that Mr. Sonnier did not pay child support on behalf of Ireland and that she was not financially dependent on him thereby requiring plaintiff to introduce these records and call Ms. Spillman at trial.

25)   High School transcript of Skye Sonnier;

**OBJECTION:**  Hearsay, F.R.E. 801, *et seq.*

**PLAINTIFF'S RESPONSE:**      These records satisfy the "business records" exception. F.R.E. 803(6)(B).

26)   Itemized Statement of Earnings from Social Security Administration regarding Skye Sonnier for the years 2001-2011;

27)   Pertinent portions of Skye Sonnier's records from TopCor Offshore;

**OBJECTION:**  Hearsay, F.R.E. 801, *et seq.*

**PLAINTIFF'S RESPONSE:**      These records satisfy the "business records" exception. F.R.E. 803(6)(B).

28)   Pertinent portions of Skye Sonnier's records from Key Energy Services;

**OBJECTION:**  Hearsay, F.R.E. 801, *et seq.*

**PLAINTIFF'S RESPONSE:**      These records satisfy the "business records" exception. F.R.E. 803(6)(B).

29)   Estis' applicable insurance policies. (EWS 00114-127); and

**OBJECTION:**  Hearsay, F.R.E. 801, *et seq.*  Estis further objects that there is no relevance to introducing the insurance policy of Estis since Estis' ability or inability to pay is inadmissible.

## Saul C. Touchet

1.   Medical recap, with invoices;

**OBJECTION:**  Hearsay, F.R.E. 801, *et seq.*

2.   Certified medical records – Dr. John Sledge;

3.     Certified medical records – Dr. Louis Blanda;

4.     Certified medical records – Dr. John Cobb;

5.     Certified medical records – Dr. Daniel Hodges;

6.     Certified medical records – Aimee Broussard, APRN/Priority Psychiatric;

7.     Certified medical records – Dr. James Blackburn;

8.     Certified medical records – Dr. Mark Warner;

9.     Certified medical records – Dr. David Barczyk;

10.    Certified medical records – Anesthesiology & Pain Consultants;

11.    Certified medical records – Dr. Matthew Mitchell;

12.    Certified medical records – Envision Imaging;

13.    Certified medical records – Advanced Imaging;

14.    Certified medical records – Lourdes Imaging/Our Lady of Lourdes;

15.    Certified medical records – Michelle Vincent;

16.    Certified medical records – Lafayette Surgical Specialty Hospital;

17.    Certified medical records – Acadiana Comprehensive Therapy;

18.    Certified medical records – Genesis Behavioral Hospital;

19.    Certified medical records – Falcon Pharmacy;

20.    Certified medical records – Delcambre Pharmacy;

21.    Certified medical records – Iberia Comprehensive;

22.    Certified medical records – Dr. Scott Bergeaux;

23.    Plaintiff's personnel and/or employment records from Estis Well Service;

24.    Plaintiff's Payroll Sheet from Estis Well Service;

25.    Plaintiff's tax returns and/or W-2 statements;

26.   Estis' Initial Disclosures:

**OBJECTION:**  Estis objects to the listing of its Initial Disclosures as an exhibit in this matter.  Initial Disclosures are not admissible on their face.  Furthermore, Initial Disclosures, be design, are inclusive of inadmissible information and the compliance with the Federal Rules of Civil Procedure by the defendant does not waive such objections.  Since this listing is nonspecific, Estis reserves its right to asset additional objections to this exhibit.

27.   Estis' responses to Saul Touchet's Interrogatories and Requests for Production;

**OBJECTION:** Estis would object to this exhibit on the grounds that it does not specifically list the Interrogatory or Request for Production to be entered into evidence.  Answers to interrogatories and requests for production of documents are not admissible on their face.  Furthermore the rules of discovery allow for inadmissible evidence to be discovered through interrogatories and requests for production of documents and the defendant complying with the Federal Rules of Civil Procedure in this regard does not waive any objection to the later admissibility of such answers to interrogatories and requests for production.  This listing does not allow Estis to assert additional objections which may be applicable.

28.   Estis' applicable insurance policies;

**OBJECTION:**  Hearsay, F.R.E. 801, *et seq.*  Estis further objects that there is no relevance to introducing the insurance policy of Estis since Estis' ability or inability to pay is inadmissible.

29.   Estis' HSE Manual;

30.   Rule 26(f) Report;

**OBJECTION:**  Estis objects to the listing of the Rule 26(f) Report as an exhibit in this matter.  Rule 26(f) Reports are not admissible on their face.  Furthermore, the Rule 26(f) Report includes information that, by design, would not be later admissible in Court.  Estis reserves its right to assert further objections to this exhibit if certain portions of the Rule 26(f) Report are attempted to be admitted.

31.   Post–accident photographs;

32.   Post–accident photographs of Skye Sonnier;

33.    All medical updates and/or demands for Maintenance & Cure made to Estis on behalf of Saul Touchet;

**OBJECTION:**  Hearsay, F.R.E. 801, *et seq.*  Estis further objects on the grounds that the "medical updates and/or demand for Maintenance & Cure" are not specifically identified. Accordingly, Estis may have additional objections to said exhibit if additional information becomes known.

34.    Vocational Rehabilitation report and C.V. of Stan McNabb with all attachments thereto;

**OBJECTION:**  Hearsay, F.R.E. 801, *et seq.*

35.    Future Medical Cost Analysis report of Stan McNabb;

**OBJECTION:**  Hearsay, F.R.E. 801, *et seq.*

36.    Economic reports and C.V. of G. Randolph Rice, Ph.D. with all attachments thereto;

**OBJECTION:**  Hearsay, F.R.E. 801, *et seq.*

37.    Any deposition, written discovery, discovery responses and/or pleadings   in connection with the captioned litigation, including any exhibit attached thereto;

**OBJECTION:**  This exhibit is not properly identified in order for Estis to list a specific objection.  Accordingly, Estis reserves its right to further object to this exhibit if additional clarification is received.

38.    Any exhibit needed for impeachment or rebuttal purposes;

**OBJECTION:**  This exhibit is not properly identified in order for Estis to list a specific objection.  Accordingly, Estis reserves its right to further object to this exhibit if additional clarification is received.

39.    Any exhibit listed by any other party.

**OBJECTION:**  This exhibit is not properly identified in order for Estis to list a specific objection.  Accordingly, Estis reserves its right to further object to this exhibit if additional clarification is received.

40.     Diagram of accident scene.

    **OBJECTION:** Hearsay, F.R.E. 801, *et seq.* Estis further objects on the grounds that it has never been provided with a copy of this document.

41.     Estis Daily report, 3/9/11.

Potential Rebuttal Evidence

40.     Response to plaintiff's subpoena duces tecum by Estis Well Service, LLC and/or CIA of LA/Channing's Investigative Agency.

41.     Invoices from CIA of LA/Channing's Investigative Agency regarding surveillance performed on Saul Touchet;

42.     Surveillance video of Saul Touchet.

## DEFENDANT:  ESTIS WELL SERVICE, LLC

1.     Videotape surveillance of Saul Touchet taken by Channing's Investigative Service (July 2011, February 2012, October-November 2014).

    **OBJECTION:**   Plaintiff, Saul Touchet, objects to the introduction of the video surveillance as irrelevant and unduly prejudicial until the potential impeachment value is established.

2.     Records of advances and maintenance paid to Saul Touchet.

3.     Records of cure/medical expenses paid regarding Saul Touchet.

4.     Check payable to Teddy J. Sonnier for funeral expenses regarding Skye Sonnier.

5.     Earnings records including Form W-2, federal and/or state income tax returns both before and after March 9, 2011 for Sonnier and Touchet.

6.     Recorded statements/transcriptions of statement of Saul Touchet, Brian Suire, Robert Pinson, Joshua Bourque, and Timmy Duhon taken on March 9, 2011, by Walter Kimel.

    **OBJECTION:** Plaintiff, Saul Touchet, objects to the introduction of the recorded statement of any witness. The recorded statements were requested in discovery but not produced. Transcribed statements were produced, but not the audio recordings.

7.     Death Certificate and Autopsy Protocol prepared by Dr. Richard E. Tracy involving Skye Sonnier.

8.    No accident acknowledgment form signed by Saul Touchet, dated March 9, 2011.

9.    Certified copy of Child Support Financial Summary Printout dated 3/22/11, regarding Skye Sonnier's child support payments.

10.   LaCare card issued to Saul Touchet (Exhibit 1 in Touchet's deposition).

**8.   Objections to Witness and Exhibit Lists:**

**9.   Counsel Affirmations:**

3/14/16
(Date)                                                Brian C. Colomb

3/14/16
(Date)                                                Nicholas A. Blanda

3/14/16
(Date)                                                Alan K. Breaud

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing joint status report was filed electronically with the Clerk of Court using the CM/ECF system and has been served upon counsel for all parties to this proceeding via electronic filing notification, facsimile, and/or first class United States mail, properly addressed, postage prepaid, at the last known address.

Signed at Lafayette, Louisiana, this 14 day of March, 2016.

Brian C. Colomb